**EXHIBIT 7**

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN VARALLO,<br>                      Plaintiff,<br>v.<br><br>TOWN OF NANTUCKET - POLICE<br>DEPARTMENT and JAMES SAMSON,<br><br>                      Defendants. | CIVIL ACTION<br>NO: 05-11547-RWZ |

### Plaintiff's Liability Expert Disclosures Pursuant to Fed. R. Civ. P. 26(a)

Plaintiff expects to offer the testimony of the following liability expert at the trial of this matter: Paul J. Mackowski, 250 Melrose Street, Melrose, Massachusetts 02176. This written report has been prepared by the witness, with the assistance of counsel for the plaintiff, to set forth his qualifications, a summary of his opinions, the basis for those opinions, the data and information upon which he relies, materials which he expects may be used at trial in support of his opinions and other information required by Fed. R. Civ. P. 26 (a)(2). Plaintiff notes, however, that certain factual information from defendant Town of Nantucket - Police Department has yet to be disclosed or produced or is not yet available for review by Mr. Mackowski and, therefore, plaintiff reserves her right to amend and/or supplement this disclosure as necessary and appropriate upon receipt of the Town's remaining discovery.

**Summary of Expected Testimony:** Mr. Mackowski is expected to testify regarding his education, training and experience, his review of the disclosures, written discovery, documents produced, deposition and trial testimony and exhibits as well as other evidence in this case, his analysis of that material, his observations regarding law enforcement policies, procedures, practices, customs, circumstances and training in general, and those of the Nantucket Police Department in particular, as well as regarding the events leading up to, during and following the sexual assault of Lauren Varallo by Nantucket Special Police Officer James Samson. More specifically, Mr. Mackowski is expected to testify as follows:

**Qualifications:** Detective Paul J. Mackowski has been a police officer with the Medford Massachusetts Police Department for 22 years and has been a detective for seven of those years. In addition to serving Medford, early in his law enforcement career, he served as a special police officer in Brattleboro, Vermont, as a Temporary Summer Officer in Scituate, Massachusetts and as a security officer at the Boston Gardens. Mr. Mackowski also has a consulting firm, The M Group, that specializes in law enforcement training, program consulting and private investigation services.

Mr. Mackowski graduated from Northeastern University in 1984 with a Bachelor of Science degree in Criminal Justice and received his Masters in Criminal Justice in May 2001. During his years as a police officer and detective, he has received additional law enforcement training in numerous programs through, among others: the Federal Bureau of Investigation; the U.S. Attorney General's Office; the Massachusetts Attorney General's Office; the Middlesex County District Attorney's Office; the Massachusetts Criminal Justice Training Council; Suffolk University in Boston and Oxford University in England. He has considerable training in such matters as the proper training for, and conduct of, protective custodies and the investigation and prosecution of sexual assaults.

Mr. Mackowski has served as a consultant in assessing the law enforcement needs of Russia in coping with burgeoning criminal activity resulting from the collapse of communism. He coordinated the first United States / Russia Police exchange program. In 1996, he was assigned to the United States Department of Justice in Washington, DC where he assessed the policing needs and development of both short-term and long-term police training for the countries of the former Soviet Union. He has given briefings on the status of police and law enforcement training needs in former Soviet Union states to: the Central Intelligence Agency; the Federal Bureau of Investigation; the United States Senate's Permanent Subcommittee on Investigation; and the United States State Department. In other countries, he coordinated a police human rights training program for the United States Naval Justice Center of Newport, Rhode Island, for police officers from Papua New Guinea and Fiji. He served as a staff instructor at the Haitian National Police Academy in Port-au-Prince, Haiti.

**Statement of Opinions:** Noting that the disclosure or production of certain information from the Nantucket Police Department is, as yet, incomplete or is not yet available for review, Mr. Mackowski is nevertheless prepared to offer opinions regarding the following issues, subject to the right to amend and/or supplement such opinions upon receipt of the Town's remaining discovery.

(1) Mr. Mackowski is expected to testify regarding the meaning of "protective custody" in the field of law enforcement. He is expected to testify that an individual is in police custody if a police officer, acting in his role as a law enforcement officer, speaks, acts or behaves in such a way that an ordinary person in the individual's position would reasonably believe they were not free to leave or that their freedom was restrained. That individual is in protective custody if that restraint, or the reasonable belief of restraint, exists in order to protect the individual from harming himself or herself or others. Mass. Gen. L. c. 111B is one type of protective custody by which a Massachusetts police department is authorized to take an impaired individual who is out in the community into custody for the purpose of protecting the individual from injuring him or herself or others. However, Chapter 111B is not the only form of protective custody.

(2) Regarding this case in particular, Mr. Mackowski is expected to testify regarding the training, policies, procedures, customs and practices used by police departments to protect the rights of females in protective custody on the one hand, and individual police officers and the department on the other. He is expected to testify that it is standard practice during an officer's training with a police department, to be informed that every effort should be made to minimize a male officer's unsupervised contact with females in custody. He is expected to testify that it is

2

standard practice for departments to, for example, insist that only female officers or matrons (women who are not officers of the department but who are hired and trained to perform such tasks when needed) search females in custody, only female officers or matrons observe or guard females in custody if it is an unsupervised setting, and a male officer transporting a female in custody should contact his dispatcher, state his location and intended destination, and report his vehicle odometer readings before he departs with a female in custody and when he arrives. The primary purpose for such steps is to avoid, or to closely supervise and monitor, a male officer who has a female detainee in custody in order to minimize the risk of and opportunity for a sexual assault upon a female detainee as well as allegations of any such assault against the officer.

Mr. Mackowski is expected to testify that he has been required to follow these practices in small police departments as well as in the City of Medford. He has personally trained numerous officers to abide by these practices, and has observed officers training new recruits to abide by them as well. He is expected to testify that in his 22 years of experience as a police officer, he has not encountered any debate regarding the necessity of these procedures because the need for such steps is quite clear.

(3)    Mr. Mackowski is expected to testify regarding police work that is at least in part paid for by a third-party, sometimes referred to as "details." He is expected to testify that a "detail" typically identifies the method by which certain Town or police services are paid. A "detail" may also define the relationship between a company or community organization (such as a construction company, a school or a hospital) and the police department, but it does not define the relationship between an officer and a person in custody during or as a result of police services performed on that detail. He is further expected to testify that, unlike typical calls for police assistance, a police department may decline a call to conduct a detail if the department does not have the ability or personnel needed to perform the job properly or safely. He is expected to testify that in performing details, officers are still required to follow the polices and practices of the department, and are expected to exercise police powers when necessary. He is expected to testify that, generally, it would be contrary to well-established law enforcement policy to ignore police policies and practices relied upon during usual police operations simply because the officer was being paid by a third party. An officer serving a detail remains a law enforcement officer subject to department regulations, practices and procedures regardless of who or which community organization is paying for the police department's services.

(4)    Mr. Mackowski is expected to testify concerning the law enforcement community's awareness of the problem of sexual misconduct by police officers. He is expected to testify that during his years as a police officer he knows of numerous incidents of police sexual misconduct and that its existence is well known in the law enforcement community. The conduct ranges from stopping a woman for a traffic violation solely for the purpose of obtaining more information about her, to engaging in sexual intercourse in a police cruiser, to sexual assault. Some conduct is reported, some is not. He is expected to testify that his personal knowledge from working as a police officer in Massachusetts is consistent with national reports and literature concerning the issue, and that the risk of police sexual misconduct is obvious to anyone working in the field of law enforcement.

(5)    Mr. Mackowski is expected to offer his opinion that the Nantucket Police Department's failure to have in place clear policies and practices concerning the assignment of male officers to supervision of women in protective custody was contrary to standard practices and was negligent and reckless in its failure to anticipate the possibility of police sexual misconduct. He is further expected to testify that if, in fact, the assignment to a so-called "suicide watch" (as one officer called it) of a female was considered by the Department to be a "detail," then there were no policies and procedures in place directing the dispatch officers or their superiors to decline it if a properly trained female officer or matron was unavailable at the time. He is further expected to testify that, while the Department's most senior personnel seem to claim the existence of an unwritten policy that females should be guarded by females in an unsupervised setting and that, at the hospital, only the nurses were to perform "one-on-one" watches with a police officer available only as back-up (and never alone with a detainee), neither Officer Samson nor his immediate superior, Sergeant Ladner (or any of the other line personnel), were aware of any such policy. Therefore, either no such policy, in fact, existed or there was no training on any such policy which is the same as having no policy at all.

Mr. Mackowski is also expected to testify regarding the Department's assignment of Officer Samson to protective custody of a young, intoxicated woman in an unsupervised setting, and its failure to follow the most basic procedures for investigating an allegation of sexual assault. Mr. Mackowski is expected to testify that the Department should have either declined to accept the detail, if that was what it was, or it should have assigned a female officer or matron to perform the so-called "suicide watch." He is expected to testify that a male officer such as Officer Samson should not have been assigned to so-called "one-on-one" duty of a female detainee and should not have stationed himself or been allowed to station himself in her room and next to her bed. Officer Samson testified that, even though he considered Lauren Varallo to be in protective custody, that she was not free to leave and that he would not have let her leave, he had not received any training that he was not supposed to be stationed inside her room or that he was supposed to be serving only as back-up to nurses who were primarily to conduct any one-on-one observations. The Department has produced no evidence that it had in place any training consistent with such policies or that Officer Samson or his immediate supervisor, Sergeant Ladner, ever received such training.

Mr. Mackowski is expected to testify that upon learning of the allegation against Officer Samson, Sergeant Ladner should have immediately given formal notice to the Department's designated "Rape Officer" and to have: ordered that the scene, including the victim's bedding and clothing, be preserved for possible testing; created an evidence sheet; requested Officer Samson to cooperate and remain available during investigation; and contacted either the Department or the Massachusetts State Police to find out the proper way to obtain any necessary skin, tissue, hair and/or other samples for possible testing. None of these usual police steps regularly followed in a sexual assault investigation were taken with respect to the allegations against a fellow officer in this case.

**Basis of the Opinions**:    Mr. Mackowski's opinions are based upon his review of: the pleadings in this case including the Complaint, the Answers of James Samson and of the Town of Nantucket; written discovery responses and disclosures including the Defendant Town of Nantucket's Response to Plaintiff's First Request for Production of Documents, Defendant Town

4

of Nantucket's Supplemental Response to Plaintiff's First Request for Production of Documents, Defendant Town of Nantucket's Answers to Plaintiff's First Set of Interrogatories, Plaintiff's Answers to the Defendant Town of Nantucket's First Set of Interrogatories, Plaintiff's Responses to Defendant Town of Nantucket's First Request for Production of Documents, Plaintiff, Lauren Varallo's Automatic Disclosures, Defendant Town of Nantucket's Automatic Disclosures and Defendant James Samson's Automatic Disclosures; and testimony and related exhibits from the Depositions of Lauren Varallo, Christine Ladner, Charles Gibson, Suzanne Gale, James A. Samson, and John Welch. The depositions of Nantucket Police Detectives Adams and Mack and of retired Police Chief Norris were not available for review at the time of his opinions and plaintiff has reserved her right to have Mr. Mackowski amend and/or supplement this report upon receipt of such materials. Finally, Mr. Mackowski's opinions are based upon his education, training and experience and his observations, review and analysis of Massachusetts statutes and law enforcement policies, procedures, practices, customs, circumstances and training materials in general, and those of the Nantucket Police Department in particular. He expects to refer to and use such materials as he offers his opinions during the trial of this matter.

In accordance with Fed. R. Civ. P. 26(a)(2), Mr. Mackowski states that his compensation is $150 an hour, that he has not issued any publications in the past ten (10) years and, while he has testified in many dozens of criminal matters in the past four (4) years as an arresting or investigating officer, he has not testified in the capacity of a retained expert at trial or at deposition in the past four years.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _____ DAY OF

MAY, 2007.

_____
Paul J. Mackowski