UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN VARALLO,<br><br>                Plaintiff,<br>v.<br><br>TOWN OF NANTUCKET - POLICE<br>DEPARTMENT and JAMES SAMSON,<br><br>                Defendants. | CIVIL ACTION<br>NO: 05-11547-RWZ |

**JOINT PRE-TRIAL MEMORANDUM**

The parties hereby submit the following as their final pre-trial memorandum.

**1.    TRIAL COUNSEL:**

| | |
|---|---|
| For the Plaintiff: | Leo V. Boyle and/or Bradley M. Henry<br>and Suleyken D. Walker<br>MEEHAN, BOYLE, BLACK & BOGDANOW, P.C.<br>Two Center Plaza - Suite 600<br>Boston, MA 02108-1922<br>PH:  617-523-8300 |
| Defendant Town of Nantucket: | Douglas I. Louison and Regina M. Ryan<br>MERRICK, LOUISON & COSTELLO, LLC<br>67 Batterymarch Street<br>Boston, MA 02110<br>Boston, MA 02108 |
| Defendant James Samson: | Philip Slotnick<br>Shocket & Dockser, LLP<br>6 Huron Drive - PO Box 2219<br>Natick, MA 01760 |

**2.    THE CASE WILL BE TRIED TO A JURY**

3.  **CONCISE SUMMARY OF THE EVIDENCE:**

The plaintiff, Lauren Varallo, expects the evidence at trial to show that, on July 21, 2002, she had attended a beach party with friends. After returning home to change, she and her mother argued about whether she would be allowed to go out again that evening because, against her parents wishes, Lauren had been drinking with her friends. Frustrated, Lauren locked herself in the bathroom and superficially cut herself with a safety razor. Lauren's sister found her and alerted her parents who dialed 911. Lauren was taken in an ambulance to Nantucket Cottage Hospital. Her parents followed separately.

Plaintiff expects the evidence to show that, at the emergency room, Lauren's wrist was bandaged and that, although her doctors told her parents that Lauren was not suicidal, they felt she should stay at the hospital overnight in a special care unit. There was some discussion about whether Mrs. Varallo could stay with her daughter overnight, but she was told that a protective detail would be assigned to watch over Lauren for the night and that she should not stay.

Plaintiff expects the evidence to show that, a Nantucket Police Officer later identified as Summer Officer James A. Samson, arrived at the hospital sometime after midnight to watch over Lauren. After seeing him in her room, Lauren fell asleep but repeatedly woke up during the night, chilled, to find the covers off. Each time she woke up, the police officer was either sitting in a chair near her bed or walking in and out of the room. Early in the morning of the 22nd, Lauren again woke up and found the police officer next to her bed. This time her covers were off of her legs, her gown was pulled up, her underwear was pushed to the side and the police officer's fingers were inside her. When the police officer became aware that Lauren was awake, he quickly pulled his fingers out of her and pretended to be watching television. Lauren immediately got up and reported the incident to a nurse. The officer was removed from her room.

Plaintiff expects the evidence to show that, later in the morning, representatives of the Nantucket Police Department arrived and indicated to Lauren that they would give her a day to "really think about this before she made any accusations." They did not take a written statement. A nurse was present during the conversation. Mrs. Varallo, Lauren's mother, and a counselor arrived in this time frame.

Plaintiff expects the evidence to show that she was eventually discharged and went home with her mother. Lauren thought about trying to go in to work, but she felt dirty and took a long, hot shower after which she stayed in her bedroom for the remainder of the day. However, the next day, Tuesday, July 23, 2002, Lauren and her mother went to the Rape Crisis Center, which then arranged for a sexual assault examination. The doctor indicated to Lauren that she should not have been allowed to clean up or take a shower until the sexual assault examination had been conducted. A counselor then accompanied Mrs. Varallo and Lauren to the Nantucket Police Department to report the incident.

Plaintiff expects the evidence to show that the Massachusetts State Police did investigate the incident and that Officer Samson was charged with rape and indecent assault and battery on a person over 14. On August 26, 2005, Samson pled guilty to indecent assault and battery on a person over 14.

Plaintiff expects the evidence to show that, despite uncertainty about the existence of a policy or practice within the department, the Nantucket Police Department in fact had no proper policy or practice in place that prohibited a male officer from guarding a female in protective custody in an unsupervised setting. Plaintiff expects the expert evidence to show that even if a local hospital paid for certain police services, the police department was responsible for applying the same policies and practices that it applies when its officers are performing on-duty tasks. Plaintiff expects that expert evidence will show that the Nantucket Police Department's failure to have policies and practices concerning the assignment of male officers to supervision of women in protective custody was contrary to standard practices and was negligent and reckless in its failure to anticipate the possibility of police sexual misconduct.

Plaintiff expects the evidence to show that in the immediate aftermath of the assault, she suffered fear, confusion and shock as well as a sense of violation, humiliation and oppression. When police officials then told her that she should think twice about pursuing her complaint against their fellow officer, she suffered an increased sense of fear, frustration and powerlessness. When the summer was over and she returned to college, the plaintiff found it was difficult to concentrate on her studies and that she was increasingly anxious and depressed. Eventually, after experiencing both academic, social and emotional difficulties, she withdrew from college for the semester and returned home. The evidence will show that as a result of her depression, plaintiff's weight fluctuated dramatically and, when sleeping, she experienced loss of bladder control several times. Plaintiff expects the expert evidence to show that she will likely continue to suffer varying degrees of fear, alienation and distrust in her relationships with males and with persons in positions of authority such as police officers.

**DEFENDANT TOWN OF NANTUCKET:**

The defendant, Town of Nantucket, expects the evidence to show that on July 21, 2002, the plaintiff, Lauren Varallo, was transported to the Nantucket Cottage Hospital by ambulance following a 911 call by her parents. The plaintiff had inflicted wounds to herself while at home. The 911 call was handled by the Town of Nantucket dispatch and the Fire Department ambulance was dispatched to the plaintiff's residence.

The plaintiff was admitted by hospital staff for observation for intoxication and for major depression.. Admission time was approximately 12:30 a.m. Nursing personnel from Nantucket Cottage Hospital contacted the Nantucket Police Department on two occasions to arrange for a police detail to assist in the observation of the plaintiff at the hospital.

Then summer police officer, James Samson, came into the station and volunteered to fill the detail assignment at the hospital. He arrived at the hospital at about 2:30 a.m.

The plaintiff was never placed in protective custody by the Nantucket Police Department but, was a patient of the hospital. The defendant, James Samson was never informed that the plaintiff was in protective custody but rather, that she [plaintiff] was under a watch because she tried to harm herself.

The defendant, James Samson had received greater training than was generally required to hold the position as a summer reserve police officer. Samson had attended the Massachusetts Reserve Officer Criminal Justice Training Council Academy. Prior to hiring, candidates for summer reserve positions are interviewed, submit an application and criminal history checks are conducted.

The defendant, James Samson, was a productive officer during his tenure with no criminal history and had completed the Reserve Officer Criminal Justice Training Council Academy.

**4.     STATEMENT OF STIPULATED FACTS:**

    **A.     Submitted by the Plaintiff as Undisputed and Subject to Stipulation**

        a.     The plaintiff was transported to Nantucket Cottage Hospital on July 21, 2002, following a 911 call by her parents. She was held for overnight for observation.

        b.     The Nantucket Cottage Hospital contacted the Nantucket Police Department to arrange for a police officer to come to the hospital.

        c.     Special Police Officer James Samson arrived at the hospital some time after midnight on July 22, 2002 and sat watch in the plaintiff's room through the early morning hours.

        d.     On July 22, 2002, plaintiff alleged that Officer Samson had sexually assaulted her while she was in bed at the hospital.

        e.     The Massachusetts State Police investigated the plaintiff's allegations, and James Samson pled guilty to indecent assault and battery on a person over 14 on August 26, 2005.

       B.      **Submitted by the Defendant Town Undisputed and Subject to Stipulation**

           a.      The plaintiff was transported to Nantucket Hospital on July 21, 2002 where she was held for observation.

**5.   CONTESTED ISSUES OF FACT:**

A.   Whether the Town of Nantucket was negligent on July 21, 2002. (submitted by Defendant Town - plaintiff disputes date limitation and characterization).

B.   Whether the Town of Nantucket Police Department was negligent with respect to the assignment of its Summer Officer James Samson to the protective custody of plaintiff Lauren Varallo. (Submitted by the plaintiff.)

C.   Whether the Town of Nantucket Police Department was negligent with respect to the failure to properly train, instruct or supervise its Summer Officer James Samson in the proper conduct of a protective custody prior to assigning him to the protection of plaintiff Lauren Varallo. (Submitted by the plaintiff.)

D.   Whether the Town of Nantucket Police Department was negligent in failing to have in place a practice or policy that prohibited, absent exigent circumstances, a male police officer from being assigned to watch a woman in police custody in an unsupervised setting such as that presented in July 2002 in this case. (Submitted by the plaintiff.)

E.   Whether the alleged negligence on behalf of the Town of Nantucket was the proximate cause of the plaintiff's injuries? (submitted by Defendant Town - plaintiff disputes date limitation and characterization).

F.   Whether there was a causal link between the Department's conduct, acts and/or omissions and the plaintiff's injuries. (Submitted by the plaintiff.)

G.   Whether Nantucket Police Department Summer Officer James Samson's indecent assault and battery violated the plaintiff Lauren Varallo's constitutional rights. (Submitted by the plaintiff.)

H.   Whether there was a causal link between defendant Samson's conduct and the plaintiff's injuries. (Submitted by the plaintiff.)

**6.   JURISDICTIONAL QUESTIONS:**    None.

7. **ISSUES OF LAW:**

   A. The defendant Town's motion for partial summary judgment having been recently allowed by the Court, the plaintiff's remaining claims for trial are those for constitutional violations on the part of the Town's Summer Officer James A. Samson, claims of negligence on the part of the Town and any damages to which the plaintiff is entitled.

   B. The Town argues that the defendant, Samson, who previously pled guilty to a criminal charge arising out of the underlying incident has subsequently, repudiated

   his plea, asserting at his deposition, that he in fact did not commit the underlying act. Plaintiff considers defendant Samson's guilt to have been established by his detailed guilty plea under oath in open Court, that is plea is res judicata and that his subsequent deposition testimony is collaterally estopped and underscores his complete lack of credibility.

   C. Whether the Town of Nantucket is immune from liability pursuant to G.L. 258, the Massachusetts Tort Claims Act.

8. **AMENDMENTS TO PLEADINGS:** Defendant James Samson will seek leave to amend his Answer by dismissing the cross-claim against the Town of Nantucket Police Department.

9. **ADDITIONAL MATTERS** The defendant, Town of Nantucket has filed a Motion to Preclude the Plaintiff's Expert from Testifying at Trial. Plaintiff contends that the motion is untimely and without merit and will oppose as provided for under the rules of civil procedure.

10. **PROBABLE LENGTH OF TRIAL:** 5 days.

11. **TRIAL WITNESSES (factual and expert):**

    **PLAINTIFF:**

a. Lauren Varallo
b. Carol Varallo
c. James Samson
d. Christine Ladner
e. Randolph Norris
f. Charles Gibson
g. John Welch
h. Suzanne Gale

i. William Burke
j. Kimberly Squire
k. Paul Mackowski (liability expert, report attached)
l. Anne Burgess (damages expert, report attached)
m. any witness listed by either of the defendants, whether or not actually called

**DEFENDANT: TOWN OF NANTUCKET**

a. Kristie Stolgitis.
b. Jerome Mack, Det,. Nantucket Police Department.
c. Jerry Adams, Det, Nantucket Police Department.
d. James Samson.
e. Jane Bonvini.
f. Christine Ladner, Sgt., Nantucket Police Department.
g. Randolph Norris (Ret) Chief, Nantucket Police Department.
h. Charles Gibson, Deputy Chief, Nantucket Police Department.
i. C. Elizabeth Gibson, Town of Nantucket.
j. John F. McGrady, Jr., Deputy Chief, Nantucket Police Department.
k. Jill Kennedy.
l. Martha Greenfield.
m. Nancy Luchini.
n. Melissa Mullen.
o. f/n/u Hinson, M.D.
p. Kimberly A. Squier, Trooper, Massachusetts State Police.
q. William J. Burke, Sgt.,Massachusetts State Police.
r. Charles A. Morano, Esquire.
s. Philip A. Tracy, Jr., Esquire.
t John Muhr, Nantucket Police Department.
u. John Welch, Nantucket Police Department.
v. Suzanne Gale, Nantucket Police Department.

**DEFENDANT: JAMES SAMSON**

a. James Samson
b. Lauren Varallo
c. Jill Kennedy
d. Melissa Mullen

12. **DEPOSITION / DISCOVERY EVIDENCE TO BE OFFERED AT TRIAL:**

Depending upon the actual date of expected testimony at trial, the parties anticipate all testimony to be presented live, rather than by deposition or by audio-visual means. Should that change, the parties will immediately inform the court.

13. **VOIR DIRE/JURY INSTRUCTIONS**:

Counsel for each party will file their respective voir dire and jury instructions under separate cover.

14. **MOTIONS IN LIMINE:**   Motion to Preclude Plaintiff's Expert Witness.  Plaintiff contends that the motion is untimely and without merit and will oppose as provided for under the rules of civil procedure.

| | |
|---|---|
| Plaintiff LAUREN VARALLO,<br>By her attorneys, | Defendant TOWN OF NANTUCKET,<br>By its attorney, |
| | */s/ Regina M. Ryan (signed by assent based on Town's submission, August 16, 2007)* |
| */s/ Bradley M. Henry* | |
| _____ | _____ |
| Peter J. Black (BBO # 044407)<br>Bradley M. Henry (BBO # 559501)<br>MEEHAN, BOYLE, BLACK & BOGDANOW, P.C.<br>Two Center Plaza, Suite 600<br>Boston, MA 02108<br>(617) 523-8300 | Douglas I. Louison (BBO # 545191)<br>Regina M. Ryan<br>MERRICK, LOUISON & COSTELLO<br>67 Batterymarch Street<br>Boston, MA 02110<br>(617) 439-0305 |
| | Defendant JAMES SAMSON<br>By his attorney, |
| | */s/ Philip Slotnick (signed by assent to BMH on August 16, 2007)* |
| | _____ |
| | Philip Slotnick (BBO # 466960)<br>SHOCKER & DOCKSER, LLP<br>6 Huron Drive, P.O. Box 2219<br>Natick, MA 01760<br>(508) 653-0160 |