UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

LAUREN VARALLO,

Plaintiff,

v.

TOWN OF NANTUCKET - POLICE
DEPARTMENT and JAMES SAMSON,

Defendants.

CIVIL ACTION
NO: 05-11547-RWZ

**PLAINTIFF'S OPPOSITION TO DEFENDANT TOWN OF
NANTUCKET - POLICE DEPARTMENT'S MOTION *IN LIMINE***

The defendant Town of Nantucket Police Department has moved to preclude the

testimony of the plaintiff's expert witness, Paul J. Mackowski, on the grounds that Mr.

Mackowski is not qualified to testify and that such testimony is not admissible under the

reliability principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594

(1993). As discussed below, Mr. Mackowski is well qualified to testify in this case, his testimony

will aid the jury in its understanding of the issues and is reliable and admissible under *Daubert*.

**ARGUMENT**

**I.      "Reliability" And "Qualification" Standards**

**A.      "Reliability" Standards Under *Daubert***

The consistent theme in *Daubert* and its progeny is that in determining the admissibility

of an expert's opinion, there is no single test of "reliability" that will apply to every situation, and

that the judicial inquiry is "a flexible one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

U.S. 579, 594 (1993). Reliability can be established in a variety of ways, as much "depends upon

the particular circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael*,

119 S.Ct. 1167, 1175 (1999); *U.S. v. Shea*, 957 F. Supp. 331 (D. N.H. 1997) *aff'd* 159 F.3d 37

(1st Cir. 1998) ("No single factor is necessarily dispositive in this analysis and other factors might

also warrant consideration in the appropriate case."). Although the Court must act as a

"gatekeeper" of expert testimony, this role is "tempered by the liberal thrust of the Federal Rules

of Evidence and the 'presumption of admissibility.'" *Bericochea-Cartagena v. Suzuki Motor Co*,

7 F. Supp.2d 109, 113 (D.P.R. 1998), *citing Borawick v. Shay* 68 F.3d 597, 610 (2d Cir. 1995);

*see also Marmol v. Biro Mfg. Co.*, 1997 WL 88854, *4, 1997 U.S. Dist. LEXIS 21669, *10

(E.D.N.Y. Feb. 24 1997) (*Daubert* Court "cautioned against inflexible application of a definitive

checklist or test").

        In its motion, the defendant has improperly attempted to impose the specific *Daubert*

factors that were developed for scientific, technical and engineering experts onto a case involving

issues of police invasion of civil rights. *Bericochea-Cartagena*, 7 F. Supp.2d at 112-13 (*Daubert*

factors are inapplicable where expert testimony based on experience and training in the field);

*Liriano v. Hobart Corp.*, 1996 U.S. Dist. LEXIS 864, 1996 WL 34147, * 3 (S.D.N.Y. Jan. 30,

1996), *subsequent opinion*, 949 F. Supp. 171 (S.D.N.Y. 1996) (expert testimony admissible

without applying *Daubert* factors because conclusions not predicated on untested scientific

observations, but rather on personal experience or training). As stated in *Forbis v. City of

Portland*, 2003 U.S. Dist. LEXIS 8957, 5-6 (D. Me. 2003) *quoting Kumho Tire Co., Ltd. v.

Carmichael*, *supra*:

>               the specific analytic factors listed in *Daubert* "neither necessarily
>               nor exclusively apply to all experts or in every case." . . . Relevant
>               reliability concerns may focus on personal knowledge or
>               experience, not just scientific principles. . . ."The factors identified
>               in *Daubert* may or may not be pertinent in assessing reliability,

depending on the nature of the issue, the expert's particular
expertise, and the subject of his testimony." . . . "Whether
Daubert's specific factors are, or are not, reasonable measures of
reliability in a particular case is a matter that the law grants the trial
judge broad latitude to determine."

In light of the applicable standards, this Court's "gate-keeping" function should be
tailored to the nature of Mr. Mackowski's proposed testimony about police practices and policies
involving  training and supervision, and should focus on whether such testimony will aid the
jury's understanding of the case and its fact-finding role. For the reasons discussed below, his
testimony fully satisfies *Daubert* and its principles of reliability.

### B.     Standards as to the Necessary Qualifications of an Expert Witness

The "gatekeeping function" contemplated by the expert-witness qualification rule
essentially requires the trial judge to assess whether it is "reasonably likely that the expert
possesses specialized knowledge which will assist the trier better to understand a fact in issue."
*United States v. Alzanki*, 54 F.3d 994, 1005 (1st Cir. 1995), *citing United States v. Sepulveda*, 15
F.3d 1161, 1183 (1st Cir. 1993). As discussed below, Mr. Mackowski's bachelors and masters
degrees in criminal justice, his extensive training, background and twenty-two years experience
as a police officer in both small and large police departments, as a police sergeant, as an
instructor and trainer of police departments throughout the world on, among other things, the
rights of detainees, render him particularly well-qualified to testify in this case, based on his
extensive experience and education in the field. *Byrne v. Liquid Asphalt Sys.*, 250 F. Supp. 2d 84,
89 (D.N.Y. 2003) ("'extensive practical experience'" in the relevant fields is, alone, sufficient to
qualify an expert to testify under *Daubert* and the Federal Rules of Evidence"); *Bericochea-
Cartagena*, 7 F. Supp.2d at 112-13 (admissibility of expert testimony based on experience and

training in the field);  *Liriano v. Hobart Corp.*, 1996 U.S. Dist. LEXIS 864, 1996 WL 34147 * 3 (S.D.N.Y. Jan. 30, 1996), *subsequent opinion*, 949 F. Supp. 171 (S.D.N.Y. 1996) (expert testimony admissible because conclusions not predicated on untested scientific observations, but rather on personal experience or training).

The defendant relies on *Berry v. City of Detroit*, 25 F. 3d 1342 (6th Cir. 1994) to support its assertion that Mr. Mackowski should be precluded from testifying based on his qualifications. The defendant's reliance is misplaced. *Berry* has been *repeatedly* distinguished from cases such as the present, for reasons equally applicable here.  For example, the *Berry* decision was addressed in *Forbis v. City of Portland, supra*, 2003 U.S. Dist. LEXIS 8957, 5-6.  As explained therein, the expert witness in *Berry* <u>was permitted to testify</u>, but his testimony was ultimately viewed as insufficient to support the jury's particular verdict.  The witness had "served as a deputy sheriff for two years without any formal training ... served as sheriff for four years, although 'not one question was asked during trial to elicit what [the witness] did or learned during his four years as sheriff, a job for which the only necessary qualification is the ability to get elected ...." The *Forbis* court held that:

> *Berry* is distinguishable on its facts. There is significantly more evidence in the record here concerning Waller's education, training and experience. He worked as a police officer in departments both larger and smaller than the Portland police department, and his opinion applies to a department with 150-160 officers, Expert Motion at 5, a much smaller group than the 5,000 officers apparently employed in the city of Detroit ... Waller is qualified to testify as an expert in this case; his qualifications may well not be ideal, but that is a matter that goes to the weight rather than the admissibility of his opinions, a matter that the defendants may address on cross-examination.

*Forbis v. City of Portland*, 2003 U.S. Dist. LEXIS 8957 (D. Me. 2003)

The Circuit Court that decided *Berry* has, subsequently, also greatly limited its holding. In the much more recent case of *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004), the Court rejected the defendants' use of Berry as grounds to disqualify the plaintiff's expert on police practices, stating that "the chief reason for our decision in *Berry* was that the expert's credentials demonstrated that he had no specific expertise about police activities. He had limited experience, given that he was appointed as a deputy sheriff, a post that required almost no qualifications, and he had been fired twice from the position. Furthermore, he lacked any formal training or experience on the subject of criminology or police actions. Compounding the problem was his ungrounded and methodologically flawed testimony regarding what effect the City of Detroit's procedural shortcomings would have upon the future conduct of 5,000 police officers who would be confronted with a diverse and unpredictable array of situations in which force would be used." There are no such shortcomings with the qualifications or proposed testimony of Mr. Mackowski.[1]

## II. Mr. Mackowski Is Well-Qualified And Has Specialized Knowledge That Will Aid The Jury's Understanding Of This Issues In This Case.

As was expressly stated in great detail in plaintiff's Supplemental Answers to Interrogatories and Liability Expert Disclosures (Docket No. 30), Mr. Mackowski graduated from Northeastern University in 1984 with a Bachelor of Science degree in Criminal Justice and received his Masters in Criminal Justice in May 2001. During his years as a police officer and

---

[1]    The Town's reliance on *West by & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997) is equally misplaced. That case involved an "affidavit of the plaintiff's expert, a professor of criminal justice" which was "admissible to show that the Town had been negligent in its supervision of Waymire" and was only inadmissible "to show that this negligence constituted a municipal policy of refusing to protect teenage girls from the sexual depredations of the Town's police officers" because it was not only a legal conclusion but also one "that exceeded the expert's professional competence, which was limited to describing sound professional standards and identifying departures from them."

detective, he received additional, ongoing law enforcement training in numerous programs through such law enforcement agencies as: the Federal Bureau of Investigation; the U.S. Attorney General's Office; the Massachusetts Attorney General's Office; the Middlesex County District Attorney's Office; the Massachusetts Criminal Justice Training Council; Suffolk University in Boston and Oxford University in England. He has considerable training in such matters as the proper training for, and conduct of, protective custodies and the investigation of sexual assaults.

Mr. Mackowski has been a police officer with the Medford Massachusetts Police Department for 22 years and has been a detective for seven of those years. During his career, he has personally trained numerous officers with respect to, among many other things, standard practices in the treatment of female detainees by male officers and the proper conduct of male-to-female custody, interview and transport scenarios. Also, early in his law enforcement career, he served as a Special Police Officer in Brattleboro, Vermont, as a Temporary Summer Officer in Scituate, Massachusetts and as a Boston Gardens security officer. He also has a consulting firm that specializes in law enforcement training, program consulting and private investigation services.

Mr. Mackowski served as a consultant in assessing the law enforcement needs of Russia in coping with burgeoning criminal activity following the collapse of communism. He coordinated the first U.S. / Russia Police exchange program. In 1996, he was assigned to the U.S. Department of Justice in Washington, DC where he assessed the policing needs and development of short-term and long-term police training for the countries of the former Soviet Union. He has rendered opinions and given briefings on the status of law enforcement training needs of such countries to: the Central Intelligence Agency; the Federal Bureau of Investigation; the United States Senate's Permanent Subcommittee on Investigation; and the United States State Department. In other

countries, he coordinated a police human rights training program for the United States Naval

Justice Center of Newport, Rhode Island, for police officers from Papua New Guinea and Fiji.  He

served as a staff instructor at the Haitian National Police Academy in Port-au-Prince, Haiti.

Clearly, Mr. Mackowski would appear to have sufficient qualifications to also render

opinions and testify as an expert in this case as well.

### III.     Mr. Mackowski's Testimony Is Of Sufficient Reliability To Aid The Jury

As was expressly stated in great detail in plaintiff's interrogatory answers and expert

disclosures, the matters upon which Mr. Mackowski is expected to testify are directly within his

areas of expertise and are not matters about which the typical juror is expected to have much, if

any, knowledge or experience.  Such matters include, among other things:  the scope and meaning

of various types of "protective custody" in the field of law enforcement; the difference between

protective custody under Mass. Gen. L. c. 111B and other forms of protective custody; the training,

policies and standard practices used by police departments to protect the rights of females in

custody;  the scope and obligations of police officers assigned by their superiors in performing their

law enforcement duties as well as the nature, scope and performance of officers covering police

work paid in part by a third-party;  the proper assignment of officers to protective custody duties

and their training and supervision with respect to such duties.

More specifically, Mr. Mackowski is expected to testify that it is standard practice during

an officer's training with a department to be informed that every effort should be made to minimize

a male officer's unsupervised contact with females in custody.  He is expected to testify that it is

standard practice for departments to, for example, insist that only female officers or matrons

(women who are not officers of the department but who are hired and trained to perform such tasks

-7-

when needed) search females in custody, that only female officers or matrons observe or guard females in custody in unsupervised settings, and that a male officer transporting a female in custody must follow detailed procedures specifically to avoid the opportunity for sexual abuse and allegations thereof.  He is expected to explain that the primary purpose for such steps is to avoid, or to closely supervise and monitor, any male officer who has a female detainee in custody in order to minimize the risk of and opportunity for a sexual assault upon a female detainee as well as allegations of any such assault against the officer.

Mr. Mackowski is expected to testify regarding the Town's purported defense that Summer Officer Samson was actually performing a private "detail" for the hospital when he sexually assaulted Ms. Varallo and that, for this reason, the Town is somehow not liable.  Mr. Mackowski is expected to explain to the jury that a police "detail" typically identifies the method by which certain police services are paid, and that it does not define the relationship between an officer and a person in custody during, or as a result of, police services performed on that detail.  He is expected to explain that, unlike typical calls for police assistance, a department may decline a call to conduct a detail if the department does not have the ability or personnel needed to perform the job properly or safely.  He is expected to testify that in performing details, officers are still required to follow all departmental polices and practices.  And, he is expected to testify that it would generally be contrary to well-established law enforcement standards to ignore police policies and practices relied upon during usual police operations simply because the officer was being paid by a third party.  He is expected to testify that an officer serving a detail remains a law enforcement officer subject to department regulations, practices and procedures regardless of who or which community organization is paying for the police department's services.

Mr. Mackowski is expected to testify about how the conduct, acts and omissions of the Town's police department failed to meet such standards.  He is expected to testify that, under the circumstances presented in this case, the department should not have assigned a male, Summer Police Officer with the training and experience level of James Samson to unsupervised protective custody duty of a female detainee at the hospital.  Mr. Mackowski is expected to testify that the department's failure to have in place clear policies and practices concerning the assignment of male officers to supervision of women in protective custody was contrary to standard practices and that the Town was negligent in its failures to consider and anticipate the possibility of police sexual misconduct.  Such acts and omissions on the part of the Town and Samson's supervisors were contrary to well-established police practices and, depending upon which testimony from the Town is believed, contrary to the Town's own practices.  These are just some of the topics upon which Mr. Mackowski has been designated to testify and for which he is eminently qualified.

## CONCLUSION

As stated in *Daubert*, the defendant "seems ... overly pessimistic about the capabilities of the jury and of the adversary system generally.  Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.  The defendant is free to challenge the weight to be accorded Mr. Mackowski's testimony at trial. *See Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491 (D.N.H. 1996) (denying motion in limine to preclude plaintiff's proposed expert testimony where defendant's contentions affected weight and credibility of expert rather than admissibility of opinion).  However, the

Town has not established that Mr. Mackowski is unqualified or that his testimony will not aid the

jury.  Therefore, its motion should be denied.

Respectfully submitted,
PLAINTIFF LAUREN VARALLO,
By her attorneys,

*/s/ Bradley M. Henry*

_____

Bradley M. Henry, BBO No. 559501
MEEHAN, BOYLE, BLACK & BOGDANOW, P.C.
Two Center Plaza - Suite 600
Boston, MA 02108-1922
PH:  617-523-8300


_____**CERTIFICATE OF SERVICE**_____

I, Bradley M. Henry, certify that on August 17, 2007, I served this Plaintiff's Opposition to Defendant Town of Nantucket's Motion In Limine, by electronic filing and by mailing an exact copy thereof, postage prepaid to all parties of record: Douglas I. Louison, Esq., Merrick, Louison & Costello, LLP, 67 Batterymarch St., Boston, MA 02110; Philip Slotnick, Esq., Shocket & Dockser, LLP, P.O. Box 2219, Natick, MA 01760.


*/s/ Bradley M. Henry*

_____

Bradley M. Henry